**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LEATRICE TANNER-BROWN, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-565 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| DEBRA HAALAND, | : | | |
| Secretary of the Interior, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiffs Leatrice Tanner-Brown and the Harvest Institute Freedman Federation, LLC ("HIFF") filed this putative class action against Defendants Debra Haaland, the Secretary of the United States Department of the Interior ("Interior Department"), and Bryan Todd Newland, the Assistant Secretary for Indian Affairs at the Interior Department, in their official capacities, seeking an accounting relating to alleged breaches of fiduciary duties concerning land allotted to the minor children of former slaves of Native American tribes. *See* Compl., ECF No. 1. In 2014, the same Plaintiffs sought the same relief against the same Defendants before this Court. *See* Compl., *Tanner-Brown v. Jewell*, No. 14-cv-1065, (D.D.C. June 25, 2014), ECF No. 1.[1]

---

[1] "[L]arge portions of the present Complaint are identical to the 2014 Complaint." Defs.' Mot. Dismiss ("Defs. Mot.") at 12, ECF No. 15. The pleadings here reveal only minor differences. For one, different people serve as the Secretary and Assistant-Secretary of the Interior Department today. Also, aside from some 1910 deeds that will be mentioned later in this Opinion, *see* Ex. I, ECF Nos. 18-9, 18-10, "each document that Plaintiffs have attached in support of their present Complaint was also included as an exhibit in [the 2014 action]." Defs.' Reply Mem. Mot. Dismiss ("Defs. Reply") at 5–6, ECF No. 19.

This Court dismissed Plaintiffs' claims on the ground that both Ms. Tanner-Brown and HIFF lacked Article III standing, and the D.C. Circuit affirmed. *See Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102 (D.D.C. 2016), *aff'd sub nom. Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017), *cert denied*, 139 S. Ct. 171 (Oct. 1, 2018). Plaintiffs now return to this Court with a very similar action yet seeking a different outcome. Unfortunately for them, they still fail to establish Article III standing. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

Plaintiff filed this action under Rule 23 of the Federal Rules of Civil Procedure "on behalf of all persons were [sic] Freedmen minor allottees of the Five Civilized Tribes on May 27, 1908." Compl. ¶ 12. The Court will draw from the historical background described in its previous opinion, as these alleged facts have not changed.

### A. Historical Background and the 1908 Act

During the Civil War, the so-called "Five Civilized Tribes" (*i.e.*, the Seminole, Cherokee, Choctaw, Creek, and Chickasaw Tribes) kept slaves and allied with the Confederacy. *See* Compl. ¶ 13. Beginning in 1866, following the defeat of the Confederacy, the United States entered into a series of treaties and agreements with the Five Civilized Tribes that, among other things, emancipated the Tribes' slaves and provided rights for the emancipated slaves (known as the "Freedmen") within the Tribes. *See id.*; *see also, e.g.*, Treaty of 1866, 14 Stat. 755 (Seminole); Treaty of 1898, 30 Stat. 567 (Seminole); Treaty of 1866, 14 Stat. 785 (Creek); Treaty of 1897, 30 Stat. 496 (Creek); Treaty of 1901, 31 Stat. 861 (Creek); Treaty of 1866, 14 Stat. 799 (Cherokee); Treaty of 1866, 14 Stat. 769 (Choctaw and Chickasaw). The treaties had a general common purpose between them, but their provisions varied. *See* Compl. ¶ 13.

In 1898, the United States enacted The Curtis Act, 30 Stat. 495, which allotted the land of the Five Civilized Tribes. *See id.* ¶ 14. On May 27, 1908, the United States enacted the law that that is central to this case. *See* Act of May 27, 1908, 35 Stat. 312 (the "1908 Act"); Defs. Mot. Ex. A, ECF No. 16-1 (providing a copy of the 1908 Act). Section 1 of the 1908 Act removed all restrictions on land allotted to certain members of the Tribes, including allottees enrolled "as freedmen." 1908 Act § 1; *see also Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 331 (2008) ("The 1908 Act released particular Indian owners from . . . restrictions ahead of schedule, vesting in them full fee ownership."). Plaintiffs argue that the 1908 Act did not remove restrictions from land allotted to minors. *See* Compl. ¶ 14 ("In 1908[,] Congress removed restrictions from Freedmen allotments, except land allotted to minors."). The heart of Plaintiffs' claim in this action lies with Section 6 of the 1908 Act, which provides in relevant part cited by Plaintiffs:

> That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the State of Oklahoma who shall be citizens of that State or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estate of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of [the] opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. All such reports, either to the Secretary of the Interior or to the proper probate court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors. The probate courts may, in their

discretion appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge.

And said representatives of the Secretary of the Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and to advise them in the preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land he shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including bringing any such suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind or character, made or attempted to be made or executed in violation of this Act or any other Act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands.

1908 Act § 6. Plaintiffs' claim is premised on their argument that Section 6 imposed a specific fiduciary duty on the Secretary of the Interior to account for any royalties derived from leases on land allotted to minor Freedmen. *See, e.g.*, Compl. ¶¶ 4, 23, 30–34, 37.[2]

Plaintiffs generally allege that there was "[a] pervasive system of corruption and racism . . . in Indian Country during the period following the discovery of oil and Oklahoma statehood." *Id.* ¶ 26. They claim that land was allotted to Freedmen in an attempt to overcome "protections designed to prevent illiterate and uneducated allottees from being swindled by unscrupulous persons." *Id.* They claim that the Interior Department, through district agents presumably acting pursuant to the 1908 Act, recovered money on behalf of minor allottees. *See id.* ¶ 28.

### B. Allegations Specific to Ms. Tanner-Brown and HIFF

Plaintiff Leatrice Tanner-Brown, who seeks to represent the putative class of Freedmen descendants, is allegedly the personal representative of the estate of her grandfather, George

---

[2] Plaintiffs replaced "royalty" and "lease" in the 2014 complaint with "fund" in this Complaint. *See* Defs. Mot. at 13–14 (highlighting replacements). The Court finds no significance in this change.

4

Curls, the son of former Cherokee slaves and was enrolled as a Cherokee Freedman pursuant to the Dawes Act when he was five years old. *See* Compl. ¶ 8. Ms. Tanner-Brown alleges that as a minor, Mr. Curls received allotment deeds of forty acres and twenty acres located in Nowata County, Oklahoma from the Cherokee Tribe. *See id*. She alleges that Mr. Curls's allotted land was located "in the midst of oil rich Cherokee Country," *id.* ¶ 26, and "[n]orth of the lucrative Alluwe Oil Field in the vicinity of the Cherokee Shallow Sands Oil Fields where oil was located a mere thirty-six feet below the surface in 1904," *id.* ¶ 27. She alleges that the Interior Department, however, has no record of any funds derived from Mr. Curls's allotments. *See id.* ¶ 23.

The only other named Plaintiff, HIFF, which also seeks to represent the putative class, describes itself as a company formed for the "vindication of the rights and interests of [ ] Freedmen." *Id.* ¶ 9. HIFF states that Ms. Tanner-Brown is a member of HIFF. *Id.* HIFF does not specifically identify any other members, but it alleges that it is "comprised of members including . . . representatives of other now deceased Freedmen with a direct personal stake in receipt of damages for breach of fiduciary duties owed to them by Defendants." *Id.*

As with the 2014 action, Plaintiffs here claim that Defendants breached the fiduciary duties purportedly imposed by Section 6 of the 1908 Act, and seek: (a) certification of this action as a class action under Rule 23(b) of the Federal Rules of Civil Procedure; (b) a declaration that Defendants owed fiduciary duties to minor Freedmen under the 1908 Act; (c) an order directing Defendants to provide Plaintiffs an accounting; (d) an award of reasonable costs and attorneys' fees; and (e) any other relief as may be just and proper. *See id.* § X.

## III.  ANALYSIS

Plaintiffs' theory of the case is very similar to that of the 2014 action.  Once again, Defendants move to dismiss the Complaint in its entirety on a number of grounds, arguing, among other things, that:  Plaintiffs lack constitutional standing; Plaintiffs' claim is barred by the statute of limitations; Plaintiffs fail to state a claim under the Administrative Procedure Act; and Plaintiffs fail to state a claim upon which relief may be granted.  *See* Defs. Mot. at 15–33.[3] Defendants also argue that Plaintiffs cannot certify a class because they did not move for class certification "[w]ithin 90 days after filing of a complaint in a case sought to be maintained as a class action."  Defs. Mot. at 1 n.2 (citing LCvR 23.1(b)).  Due to the Court's finding that Plaintiffs lack constitutional standing, the Court does not reach the remainder of Defendants' arguments.  As with the 2014 action, the Court addresses constitutional standing as a threshold issue here, first reviewing the applicable legal standard and then assessing the standing of each of the two named Plaintiffs, Ms. Tanner-Brown and HIFF, separately.

### A.  Applicable Legal Standard

Article III of the U.S. Constitution limits federal courts' jurisdiction to particular "cases" and "controversies."  U.S. Const. Art. 3, § 2, cl. 1.  The Supreme Court has consistently explained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  "The 'irreducible constitutional

---

[3] Defendants did not argue res judicata, which in any event does not apply here.  *See Gresham v. District of Columbia*, 66 F. Supp. 3d 178, 194 (D.D.C. 2014) ("A dismissal for lack of subject matter jurisdiction does not constitute adjudication on the merits with claim preclusive effect." (citation omitted)).

minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision." *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In other words, to establish standing as a constitutional matter, a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). And, to show an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Plaintiffs bear the burden of demonstrating their standing. *See id.* at 561.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of constitutional standing is a jurisdictional one, because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citation omitted). "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000) (citation omitted). "Moreover, because subject-matter jurisdiction relates to the Court's power to hear the claim, the Court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion." *Am. Fed'n Gov't Emps. v. Sec'y Air Force*, 841 F. Supp. 2d 233, 235–36 (D.D.C. 2012) (citing *Uberoi v. EEOC*, 180 F.Supp.2d 42, 44 (D.D.C.

2001)).  The Court is not limited to the allegations contained in the Complaint.  *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).  Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

A Rule 12(b)(1) challenge to the plaintiff's standing may either be "facial" or "factual."  *See Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA*, No. 20-cv-2552, 2021 WL 4462723, at *4 (D.D.C. Sept. 29, 2021).  A facial challenge "asks whether the complaint alleges facts sufficient to establish the court's jurisdiction."  *Id.* (citations omitted).  In a facial challenge, the Court must accept the factual allegations of the complaint as true.  *Hale v. United States*, No. 13-cv-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015).  It must also "draw 'all reasonable inferences' in the plaintiff's favor."  *People for Ethical Treatment of Animals, Inc. v. Perdue*, 464 F. Supp. 3d 300, 307 (D.D.C. 2020) (quoting *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017)).  Nonetheless, the court will "not assume the truth of legal conclusions, nor . . . accept inferences that are unsupported by the facts set out in the complaint."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks and citations omitted).  "[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice."  *Id.* (internal quotation marks and citation omitted).

On the other hand, a factual challenge to standing requires the court to "resolve factual disputes between the parties," and "the factual allegations of the complaint are not entitled to a presumption of validity."  *Hamilton v. United States*, 502 F. Supp. 3d 266, 272 (D.D.C. 2020) (citation omitted); *see Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir.

2000) ("[T]he court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." (citations omitted)).

### B.  Leatrice Tanner-Brown

The Court previously ruled that Ms. Tanner-Brown, who sued in her personal capacity as a descendent of Mr. Curls, lacked a coherent theory of standing.  *See Jewell*, 153 F. Supp. 3d at 109–11; *see also Zinke*, 709 F. App'x at 19 (holding that Ms. Tanner-Brown's "bare assertion that she is [Mr. Curls's] descendant" was insufficient to confer standing).  The Court required Plaintiffs to show that Ms. Tanner-Brown "suffered a concrete, particularized injury through more than simply genealogy."  *Jewell*, 153 F. Supp. 3d at 110.  It also ruled that even if Ms. Tanner somehow had standing through Mr. Curls's injury, "Plaintiffs have generally failed to even allege facts demonstrating that [Mr. Curls] suffered a concrete, particularized injury that is directly traceable to Defendants."  *Id.* at 112.

Ms. Tanner-Brown once again seeks to establish standing, and Defendants oppose with a facial challenge.  *See* Defs. Mot. at 19.  This time, however, the Court finds that Ms. Tanner-Brown has "suppl[ied] the necessary link" to Mr. Curls, *Zinke*, 709 F. App'x at 20, by alleging that Ms. Tanner-Brown is the personal representative of Mr. Curls's estate.  *See* Compl. ¶ 8 & Ex. A, ECF No. 1-1 (Nov. 12, 2020 appointment order).  Accordingly, "the Court's standing inquiry [will] focus exclusively on the alleged injury to Mr. Curls."  *Jewell*, 153 F. Supp. 3d at 110 n.4; *see In re African–American Slave Descendants Litig.*, 471 F.3d 754, 762 (7th Cir. 2006) (holding that descendants of former slaves claiming to sue as representatives of their ancestors' estates authorized to sue on their behalf "just have to prove the injury to the ancestors; the trickle-down question is elided"), *cert. denied*, 552 U.S. 941 (2007).  But at this juncture,

Plaintiffs once again fail to show that Mr. Curls suffered a concrete and particularized injury that is traceable to Defendants.

Plaintiffs have made some progress toward showing Mr. Curls's injury, but not nearly enough. Plaintiffs now allege that Mr. Curls's land was "leased for oil and gas drilling, and agricultural purposes" and "generated substantial revenue." Compl. ¶ 8. Because Defendants only bring a facial challenge to Plaintiffs' standing, the Court will "accept" this fact "as true" at this stage of the proceeding. *See* Defs. Mot. at 19.[4] But this fact, on its own, does not establish injury. Even if Mr. Curls was entitled to substantial funds from his land, Plaintiffs have not shown that *Mr. Curls*'s leases were mismanaged in the first place,[5] much less "establish that the injury is directly traceable to Defendants' action or inaction." *Jewell*, 153 F. Supp. 3d at 110; *see also id.* at 110 n.5 (describing "significant and perhaps insurmountable hurdles" to make this showing). As with the 2014 action, Plaintiffs have not provided any basis for believing that "had Defendants fulfilled their purported statutory duty, Mr. Curls would have received royalties or at least royalties in a greater amount than any that he did receive." *Jewell*, 153 F. Supp. 3d at 110 n.5; *see Zinke*, 709 F. App'x at 20 ("Tanner-Brown failed to allege that Curls suffered harm from the Department's alleged accounting failures."). Here, as before, Plaintiffs have "failed to even

---

[4] Defendants claim that this Court and the D.C. Circuit previously observed that "Plaintiffs' allegation that oil and gas leases existed on George Curls['s] land is factually incorrect," and therefore ask the Court to take Plaintiffs' "equivocation[]" into account. Defs. Mot. at 19–21. But Defendants have expressly conceded that "for purposes of a facial challenge, that fact must be accepted as true." *Id.* at 19. If Defendants wanted the Court to resolve this fact, they should have presented a factual challenge to Plaintiffs' standing instead.

[5] As described in the 2014 action, the record shows "some limited evidence of mismanagement or impropriety on the part of a man named Rathburn Alden, who appears to have served as the guardian of Mr. Curls and his siblings for a short period." *Jewell*, 153 F. Supp. 3d at 112 n.7 (citation omitted). But the Court found it "doubtful" that Mr. Curls suffered an injury, because by the time Mr. Curls received his allotments in 1910, Mr. Alden was no longer his guardian. *Id.*; Defs. Mot. at 20 & n.8; Ex. I, ECF Nos. 18-9, 18-10 (Mr. Curls's December 5, 1910 deeds).

allege facts demonstrating that [Mr. Curls] suffered a concrete, particularized injury that is directly traceable to Defendants." *Jewell*, 153 F. Supp. 3d at 112.

For their part, Plaintiffs claim that they lack the necessary factual records because of a "deliberate strategy" by the Interior Department to purposefully not keep such records and thereby "swindle land and money from Freedmen." Compl. ¶ 23; Pls.' Mem. Opp'n Defs.' Mot. Dismiss ("Pls. Opp'n") at 15, ECF No. 18. This explanation is undermined by the fact that Plaintiffs *do* possess many records of leases—just not Mr. Curls's.[6] In all events, Plaintiffs cannot rely on Defendants to satisfy the elements of standing for them, because "Plaintiffs bear the burden of demonstrating their standing." *Jewell*, 153 F. Supp. 3d at 108 (citation omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff . . . ." (quotations marks and citation omitted)). Given that Plaintiffs have failed to show that Mr. Curls suffered a concrete and particularized injury, Ms. Tanner-Brown lacks standing to sue on his behalf.

### C. Harvest Institute Freedman Federation, LLC

The Court also finds that HIFF, the only other named Plaintiff in this action, lacks constitutional standing. HIFF does not claim to have standing under Article III based on an injury to itself. Instead, it claims to represent its members and the purported class at large. *See* Compl. ¶ 9; Pls. Opp'n at 19–20. "An association only has standing to bring suit on behalf

---

[6] Plaintiffs possess records "indicat[ing] that there were oil, gas, and other leases on land allotted to the siblings while they were minors from which royalties were owed." *Jewell*, 153 F. Supp. 3d at 113 n.7; *see also* Pls. Opp'n at 15 ("Plaintiffs have not yet found executed leases for George Curls [but] they have found leases for his siblings who were both older and younger than George." (citing Ex. F, ECF No. 18-6)). In fact, some of these leases bear the signature and approval of Interior Department officials. *See, e.g.*, Ex. B, ECF No. 18-2 (oil and gas lease signed on behalf of Julius Curls in 1907). Plaintiffs also produced a copy of Mr. Curl's "Allotment Deed" and "Homestead Deed" dated December 5, 1910 and bearing the seal and approval of the Interior Department. *See* Ex. I, ECF Nos. 18-9, 18-10.

of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests it seeks to protect are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Sierra Club v. E.P.A.*, 754 F.3d 995, 998–999 (D.C. Cir. 2014). Defendants argue that HIFF has failed to meet its burden in establishing the first and third of these criteria, and the Court agrees.

To satisfy the first criterion, HIFF must show that at least one of its members would have standing if the member brought suit herself. *See Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 493 (D.C. Cir. 2005); *see also Warth*, 422 U.S. at 511 ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."). The Complaint makes only cursory and conclusory allegations concerning HIFF's membership, simply alleging that it is "comprised of . . . representatives of other now deceased Freedmen with a direct personal stake in receipt of damages for breach of fiduciary duties owed to them by Defendants." Compl. ¶ 9. It claims without explanation that "these Freedman . . . have a right to participate in this litigation but prefer to be represented by Harvest." *Id.*; *see also* Pls. Opp'n at 19 (same).

This is insufficient. Plaintiffs do not allege that its members are *personal representatives* of the *estates* of deceased Freedmen who received allotments as a minor, let alone that the ancestor had leases on the allotted land or that royalties on the allotted land were mismanaged. Even if Plaintiffs had made such allegations, as the Court explained in its finding that Ms.

Tanner-Brown lacks standing, Plaintiffs would still need to allege that a deceased Freedman's estate (represented by a member of HIFF) *personally* suffered a concrete and particularized injury that is traceable to Defendants' action or inaction. Plaintiffs have entirely failed to meet their burden on the first criterion, which is alone sufficient for a finding that HIFF lacks standing.

Plaintiffs also fail to establish the third criterion because the accounting it seeks necessarily requires "consideration of the individual circumstances of any aggrieved member of the organization." *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015). As Defendants persuasively argue, "there is no way to determine the appropriate amounts allegedly owed to Plaintiffs' members without specific information about each individual allotee's lease terms." Defs. Mot. at 24; *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287 (1986) ("[W]hatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." (internal quotation marks and citation omitted)). The Court therefore finds that HIFF also lacks constitutional standing, and, accordingly, dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 15) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 8, 2022                                                                      RUDOLPH CONTRERAS
                                                                                                    United States District Judge