# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LEATRICE TANNER-BROWN, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-565 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 22, 24 |
| | : | | |
| DEBRA HAALAND, | | | |
| Secretary of the Interior, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT; DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE CLASS ACTION MOTION

## I. INTRODUCTION

Plaintiffs Leatrice Tanner-Brown and the Harvest Institute Freedman Federation, LLC ("HIFF") filed this putative class action against Defendants Debra Haaland, the Secretary of the United States Department of the Interior ("Interior Department"), and Bryan Todd Newland, the Assistant Secretary for Indian Affairs at the Interior Department, in their official capacities, seeking an accounting relating to alleged breaches of fiduciary duties concerning land allotted to the minor children of former slaves of Native American tribes. *See* Compl., ECF No. 1. On July 8, 2022, this Court dismissed Plaintiffs' claims on the ground that both Ms. Tanner-Brown and HIFF lacked Article III standing. *See Tanner-Brown v. Haaland*, No. 21-cv-565, 2022 WL 2643556 (D.D.C. July 8, 2022). Plaintiffs now ask the Court to: (1) alter or amend this judgment under Federal Rule of Civil Procedure 59(e); and (2) to certify Plaintiffs' action as a class action. For the reasons set forth below, the Court will deny Plaintiffs' Motion to Alter or Amend Judgment. The Court will also deny Plaintiffs' Motion for Leave to File Class Action Motion as moot.

## II.  BACKGROUND

The Court's previous decision fully sets forth the background underlying Plaintiffs'

claims.  *See Tanner-Brown v. Haaland*, 2022 WL 2643556, at *1–2.  As such, the Court only

briefly recounts the relevant facts here.

### A.  Factual Background

In 1898, the United States enacted The Curtis Act, 30 Stat. 495, which allotted the land of

the Five Civilized Tribes (i.e., the Seminole, Cherokee, Choctaw, Creek, and Chickasaw Tribes).

*See* Compl. ¶ 14.  On May 27, 1908, the United States enacted the law that is central to this case.

*See* Act of May 27, 1908, 35 Stat. 312 (the "1908 Act"); Defs.' Mot. Ex. A, ECF No. 16-1 at 2

(providing a copy of the 1908 Act).  Section 1 of the 1908 Act removed all restrictions on land

allotted to certain members of the Tribes, including allottees enrolled "as freedmen."  1908 Act

§ 1; *see also Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 331

(2008) ("The 1908 Act released particular Indian owners from . . . restrictions ahead of schedule,

vesting in them full fee ownership.").  Plaintiffs argue that the 1908 Act did not remove

restrictions from land allotted to minors.  *See* Compl. ¶ 14 ("In 1908[,] Congress removed

restrictions from Freedmen allotments, except land allotted to minors.").  The heart of Plaintiffs'

claim in this action lies with Section 6 of the 1908 Act, which provides in relevant part cited by

Plaintiffs:

> That the persons and property of minor allottees of the Five Civilized Tribes shall,
> except as otherwise specifically provided by law, be subject to the jurisdiction of
> the probate courts of the State of Oklahoma.  The Secretary of the Interior is hereby
> empowered, under rules and regulations to be prescribed by him, to appoint such
> local representatives within the State of Oklahoma who shall be citizens of that
> State or now domiciled therein as he may deem necessary to inquire into and
> investigate the conduct of guardians or curators having in charge the estate of such
> minors, and whenever such representative or representatives of the Secretary of the

2

Interior shall be of [the] opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior.  All such reports, either to the Secretary of the Interior or to the proper probate court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors.  The probate courts may, in their discretion appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge.

And said representatives of the Secretary of the Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and to advise them in the preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land he shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including bringing any such suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind or character, made or attempted to be made or executed in violation of this Act or any other Act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands.

1908 Act § 6.  Plaintiffs' claim is premised on their argument that Section 6 imposed a specific fiduciary duty on the Secretary of the Interior to account for any royalties derived from leases on land allotted to minor Freedmen.

### B.  Procedural Background

On September 15, 2021, Defendants filed a Motion to Dismiss, arguing that, among other things, Plaintiffs lacked Article III standing.  *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 15.  The Court agreed and dismissed the case.  *See Tanner-Brown*, 2022 WL 2643556, at *1.

The Court held that Plaintiffs lacked standing because Plaintiffs failed to allege a concrete, particularized injury fairly traceable to the Secretary's action (or inaction).  *Id.*  Specifically, the Court found that Ms. Tanner-Brown lacked standing because Plaintiffs failed to show that leases on Mr. Curls's land were mismanaged or that Mr. Curls would have received any royalties had the Secretary fulfilled her statutory duty.  *See id* at 5.  The Court also found that HIFF lacked standing because Plaintiffs failed to show that any of HIFF's members received allotments under the 1908 Act, let alone whether leases were placed on those allotments or those leases were mismanaged.  *See id.* at 7.

On August 5, 2022, Plaintiffs filed their Motion to Alter or Amend Judgment that is at issue here.  *See* Pls.' Mot. to Alter or Amend J. ("Pls.' Mot."), ECF No. 24.  Through this motion, Plaintiffs seek to clarify their alleged injury.  According to Plaintiffs, the injury that gives rise to their standing in this case is *not* the Secretary's "alleged mismanagement of the trust," but "the [Secretary's] failure to provide the requested accounting."  *Id.* at 1.  Additionally, because Plaintiffs failed to move to certify their class within the required time period, Plaintiffs have also filed a Motion for Leave to File a Class Action Motion.  ECF No. 22.

### III.  ANALYSIS

Plaintiffs argue that the Court should alter or amend its judgment because the Court "ignore[d] settled principles of trust law" in its July 8, 2022, dismissal order.  Pls.' Mot. at 1; *Tanner-Brown*, 2022 WL 2643556, at *1.  Specifically, Plaintiffs contend that they cannot assert an injury sufficient to establish standing because a trust beneficiary must first receive an accounting before determining whether a trust has been mismanaged.  Pls.' Mot. at 2.  Plaintiffs also assert that trust beneficiaries are entitled to an accounting regardless of whether an injury

has been shown.  *Id.*  Accordingly, Plaintiffs argue that the Court's July 8, 2022, order must be altered or amended to avoid manifest injustice.  *Id*. at 5.  For the reasons set forth below, the Court rejects these arguments.

### A.  Applicable Legal Standard

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  Rule 59(e) is "a limited exception to the rule that judgments are to remain final."  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).  Rule 59(e) motions are "disfavored" and "relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Neidermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).  As such, a reviewing court need not grant a Rule 59(e) motion unless it finds that there is "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citations omitted).  The bar for proving manifest injustice, as Plaintiffs seek to do here, "is a high one." *Burlodge Limited v. Standex International Corp.*, No. 08-cv-525, 2009 WL 2868756, at *7 (D.D.C. Sept. 3, 2009) (citation omitted).

The Court is skeptical that Plaintiffs have met the bar for proving manifest injustice.  A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).  The Court agrees with Defendants' argument that Plaintiffs have asserted a new version of their standing argument that they could have raised before the Court's July 8, 2022, decision.  *See* Defs.' Mem. Opp'n Pls.' Mot. to Alter or Amend

J. ("Defs.' Opp'n"), ECF No. 29.  Nonetheless, for purposes of facilitating the resolution of this case, the Court will consider the merits of Plaintiffs' arguments.  *See Smith v. United States*, No. 12-cv-900, 2013 WL 5464723 (S.D.W. Va. Sept. 30, 2013) (finding that a plaintiff could not use Rule 59(e) to raise new arguments or re-litigate old matters, but still addressing the merits of the plaintiff's motion).  The Court finds that Plaintiffs' arguments are meritless.

### B.  Duty to Account

Plaintiffs rely on common-law principles of trust law to argue that trust beneficiaries are inherently entitled to an accounting, and that Plaintiffs have been injured by the Secretary's withholding of that accounting.  *See* Pls.' Mot. 3–4.  However, even assuming (without granting) that a trustee's failure to conduct an accounting creates a cognizable injury under Article III, Plaintiffs fail to show that the 1908 Act creates a trust relationship between Plaintiffs and the Secretary of the Interior.  As the Supreme Court has observed, the relationship between the United States and Indian tribes is distinct from that of a private trust relationship.  *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 18 (2011) ("The United States . . . does not have the same common-law disclosure obligations as a private trustee.").  The Government's obligations to Indians derive primarily from statute, not common law.  *Id.* at 174 ("Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compared to a trust relationship between private parties at common law.")  (citing *United States v. Mitchell*, 445 U.S. 535, 542 (1980)).  "The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute."  *Id.* at 177.  The Court therefore turns to the 1908 Act to determine the scope of the Secretary's obligations.

Section 6 of the 1908 Act prescribes the Secretary's duties owed to minor allottees of the Five Civilized Tribes.  1908 Act § 6.  Under Section 6, the Secretary is "empowered" to "appoint . . . as [s]he may deem necessary . . . local representatives within the State of Oklahoma . . . to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors."  *Id.*  If such a representative is of the opinion that a minor's estate has been mismanaged, the representative must "report said matter in full to the proper probate court [of the State of Oklahoma]" and "take the necessary steps to have such matter fully investigated," and to "preserve the property and protect the interests of said minor allottees."  *Id.* The representative must "make full and complete reports to the Secretary," and these reports "shall become public records."  *Id.*  Additionally, the Secretary's representatives must "counsel and advise all allottees . . . of all their legal rights" and "take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands."  *Id.*  Finally, the statute also provides that the Oklahoma probate courts have "discretion" to "appoint any such representative of the Secretary of the Interior as guardian or curator for such minors . . . ."  *Id.*

Section 6 does not impose a duty on the Secretary of the Interior to provide minor allottees with an accounting, for at least two reasons.  *First*, the language of the statute suggests that the Secretary's duties are discretionary.  The Secretary is "empowered"—in other words, given the power—to appoint representatives to monitor the allottees' property interests, but nothing in the statute *requires* her to do so.  *Id.*  Indeed, the statute affords the Secretary vast leeway by permitting her to "prescribe[]" "rules and regulations" and appoint representatives "*as [s]he may deem necessary*."  *Id.* (emphasis added).  The Court agrees with Defendants that "the statute's grant of discretionary power to audit guardianships . . . is a far cry from a broad duty to

manage assets; to hold funds in trust; or to provide an accounting." Defs.' Mot. at 33. The 1908 Act therefore does not establish a duty on the Secretary to provide an accounting to minor allottees.

*Second*, even if the statute imposes an affirmative obligation on the Secretary to oversee the minor allottees in some capacity, it does not create a trust relationship. While the Supreme Court has recognized "the undisputed existence of a general trust relationship between the United States and the Indian People," *United States v. Mitchell*, 463 U.S. 206, 225 (1983), later decisions have cabined that finding to instances "where Congress has indicated it is appropriate to do so." *Jicarilla*, 564 U.S. at 178. A tribal plaintiff must first identify a "specific rights-creating or duty-imposing statutory or regulatory prescription[]" before "trust principles . . . [can] play a role in 'inferring that the trust obligation [is] enforceable.'" *United States v. Navajo Nation*, 556 U.S. 287, 301  (2009) ("*Navajo II*") (first quoting *United States v. Navajo Nation*, 537 U.S. 488 (2003) ("*Navajo I*"), then quoting *United States v. White Mt. Apache Tribe*, 537 U.S. 465 (2003)). In *Jicarilla*, the Supreme Court recognized that the federal relationship with Indian tribes is subject to "various formulations" that "do not necessarily correspond to a common-law trust relationship." *Jicarilla*, 564 U.S. at 177. One such relationship the Supreme Court singled out is a "guardianship," which "is not a trust." *Id.* at 178 (quoting Restatement (Second) of Trusts, § 7, at 22 (1957)).

Here, the 1908 Act makes no reference to any "trust" or "beneficiary," but instead refers to "guardians or curators" of the minors' estates. 1908 Act § 6. Specifically, the statute provides that the Oklahoma probate courts may "appoint any such representative of the Secretary of the Interior as *guardian or curator* for such minors" presumably to replace the existing ones who

were negligent or wasteful. *Id.* (emphasis added). But as *Jicarilla* noted, "[a] guardianship is not a trust." 564 U.S. at 178 (quoting Restatement (Second) of Trusts § 7, at 22 (1957)); *see also* Restatement (Second) of Trusts § 7 (explaining that whereas a trustee "has title to the trust property," "a guardian of property does not have title to the property, but has only certain powers and duties to deal therewith for the benefit of the ward," and that "[t]he powers and duties of a guardian are fixed by statutes"). If Congress wishes to create a trust relationship between the Secretary and Indian tribes and/or their members, it certainly knows how to do so. For example, in *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001), the D.C. Circuit recognized that the Indian Trust Fund Management Reform Act required the Secretary to "[p]repar[e] and supply[] . . . periodic statements of . . . account performance and balances to account holders." *Cobell*, 240 F.3d at 1090; *see also Cobell v. Norton*, 428 F.3d 1070, 1071 (D.C. Cir. 2005) ("In 1994 Congress passed legislation that acknowledged the fiduciary duties that the Secretaries of the Departments of the Interior and Treasury—the defendants in this case—owed to beneficiaries of Individual Indian Money ("IIM") accounts."). Congress could have amended the 1908 Act or passed new legislation to impose a similar trust relationship between the Secretary and the minor allotees, but it did not. Because Plaintiffs "cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated," their theory of injury must fail. *Jicarilla*, 564 U.S. at 177 (quoting *Navajo II*, 556 U.S. at 302).[1]

---

[1] The 1908 Act does require the Secretary's representatives to make reports to the Secretary and the Oklahoma probate courts concerning mismanaged estates. *See* 35 Stat. 312, § 6. But Plaintiffs do not argue that this language creates an *accounting* duty that the Secretary or her representatives owe *to the minor allottees*. Nor have Plaintiffs alleged that Mr. Curls's leases were mismanaged in the first place. *See Tanner-Brown*, 2022 WL 2643556, at *5.

Because the Court has issued a final judgment on Plaintiffs' claims, Plaintiffs' Motion for Leave to File Class Action Motion is also denied as moot.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Alter or Amend Judgment (ECF No. 24) is **DENIED,** and Plaintiffs' Motion for Leave to File Class Action Motion (ECF No. 22) is **DENIED** as **MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 28, 2022                                RUDOLPH CONTRERAS
                                                        United States District Judge

10