UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LEATRICE TANNER-BROWN, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-565 (RC) |
| | : | | |
| v. | : | Re Document No.: | 46 |
| | : | | |
| DOUG BURGUM, | : | | |
| Secretary of the Interior, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiffs Leatrice Tanner-Brown and the Harvest Institute Freedman Federation, LLC ("HIFF") filed this putative class action against the Secretary of the United States Department of the Interior and the Assistant Secretary for Indian Affairs at the Interior Department, in their official capacities ("Defendants"),[1] seeking accountings related to land that was allotted to the minor children of emancipated slaves of Native American tribes. Plaintiffs allege breaches of trust and fiduciary duties, and seek various remedies, including declaratory and injunctive relief. This Court previously dismissed Plaintiffs' claims for lack of standing. The D.C. Circuit affirmed that decision as to HIFF, but reversed as to Tanner-Brown. On remand, Plaintiffs amended their Complaint, and Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court concludes, once again, that HIFF lacks

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), these officials have been substituted for their successors.

associational standing. And on the merits, the Court finds that Tanner-Brown failed to plead a plausible claim that Defendants owed the alleged trust or fiduciary duties. Accordingly, the Court grants Defendants' motion to dismiss.

## II. BACKGROUND

As this is the Court's third opinion in this case, it draws from the historical background described in its previous opinions because these alleged facts have not changed. During the Civil War, the so-called "Five Civilized Tribes" (*i.e.*, the Seminole, Cherokee, Choctaw, Creek, and Chickasaw Tribes) kept slaves and allied with the Confederacy. *Tanner-Brown v. Haaland* ("*Tanner-Brown I*"), No. 21-cv-565, 2022 WL 2643556, at *1 (D.D.C. July 8, 2022); First Am. Compl. ("FAC") ¶ 19 n.1, ECF No. 43-2. Beginning in 1866, following the defeat of the Confederacy, the United States entered into a series of treaties and agreements with the Five Civilized Tribes that, among other things, emancipated the Tribes' slaves (known as the "Freedmen") and provided them with certain rights. *See Tanner-Brown I*, 2022 WL 2643556, at *1. In 1898, Congress enacted the Curtis Act, 30 Stat. 495, which allotted the land of the Five Tribes with certain restrictions to groups of individuals who had historically been enslaved. *Tanner-Brown v. Haaland* ("*Tanner-Brown III*"), 105 F.4th 437, 441 (D.C. Cir. 2024).

The present lawsuit "is based on the provisions of Section 6 of the Act of May 27, 1908, 3[5] Stat. 312," which the Court refers to as the "1908 Act." FAC ¶ 19. Section 2 of the 1908 Act "provides that lands 'from which restrictions have not been removed may be leased' by the adult allottee or, if the allottee is a 'minor or incompetent,' by a 'guardian or curator' on the allottee's behalf." *Tanner-Brown III*, 105 F.4th at 441 (quoting 1908 Act § 2). Section 6 of the 1908 Act provides in relevant part:

> That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of

the probate courts of the State of Oklahoma. **The Secretary of the Interior is hereby empowered**, under rules and regulations to be prescribed by him, **to appoint such local representatives** within the State of Oklahoma who shall be citizens of that State or now domiciled therein **as he may deem necessary** to inquire into and investigate the conduct of guardians or curators having in charge the estate of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of [the] opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior. All such reports, either to the Secretary of the Interior or to the proper probate court, shall become public records and subject to the inspection and examination of the public, and the necessary court fees shall be allowed against the estates of said minors. The probate courts may, in their discretion appoint any such representative of the Secretary of the Interior as guardian or curator for such minors, without fee or charge.

And said representatives of the Secretary of the Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and to advise them in the preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land he shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including bringing any such suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind or character, made or attempted to be made or executed in violation of this Act or any other Act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands.

1908 Act § 6 (emphases added).[2]

---

[2] "The Supreme Court has held that Sections 2 and 6 of the 1908 Act apply to the allotments of minors, notwithstanding the language in Section 1 removing restrictions from the allotments held by minor Freedmen." *Tanner-Brown III*, 105 F.4th at 442 (citing *Truskett v. Closser*, 236 U.S. 223, 229 (1915)).

Tanner-Brown alleges that she is the personal representative of the estate of her grandfather, George Curls, a Cherokee Freedman Allottee who was born to former Cherokee slave parents in Indian Country, Oklahoma, in 1897.  FAC ¶ 33.  Curls received 60 acres of allotments from the Cherokee Tribe under the Curtis Act on December 5, 1910.  *Id.* ¶ 35.  At that time, Curls was a 13-year-old minor.  *Id.*

HIFF is an Ohio limited liability company formed for the purpose of vindicating the rights of the estates of Freedmen minors owed fiduciary duties by Defendants under the 1908 Act.  *Id.* ¶ 37.  HIFF alleges that its "membership is comprised of persons with African and Native American ancestry," including "several representatives of Freedmen minor estates."  *Id.*

"Tanner-Brown and HIFF have filed multiple lawsuits over the past decade on behalf of Freedmen and minor Freedmen."  *Tanner-Brown III*, 105 F.4th at 442.  "In 2014, they filed a putative class action on behalf of descendants of Freedmen minor allottees of the Five Tribes, alleging that the Interior Secretary breached his fiduciary duty as to the allotments."  *Id.*  There, Tanner-Brown brought suit only "in her personal capacity as a descendant" of Curls.  *See Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 104 (D.D.C. 2016).  This Court dismissed the case after finding that Tanner-Brown's hereditary relationship with Curls was insufficient to establish standing and that HIFF failed to plead associational standing.  *See id.* at 109–13.  The D.C. Circuit affirmed.  *Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017) (per curiam), *cert. denied* 586 U.S. 824 (2018).

In March 2021, Plaintiffs brought this similar putative class action seeking an accounting to the estate of George Curls and other minor Freedmen based on alleged duties owed under Section 6 of the 1908 Act.  *See* Compl. ¶ 36–39, ECF No. 1.  This time, Tanner-Brown brought suit as a personal representative of Curls' estate.  *Id.* ¶ 8.  Defendants moved to dismiss, ECF

4

No. 15, and the Court granted the motion after concluding that Plaintiffs lacked standing, ECF No. 21; *Tanner-Brown I*, 2022 WL 2643556, at *1.

Plaintiffs moved to alter or amend the judgment under Rule 59(e), ECF No. 24, and to certify a class action, ECF No. 22. The Court denied the motion for reconsideration, reasoning that Section 6 of the 1908 Act did not create a trust relationship between Plaintiffs and the Interior Secretary, and because any duties the 1908 Act created were discretionary. *See Tanner-Brown v. Haaland* ("*Tanner-Brown II*"), 639 F. Supp. 3d 1, 6–7 (D.D.C. 2022). The Court also denied Plaintiffs' motion for leave to file a class action motion as moot. *Id.* at 7.

On appeal, the D.C. Circuit affirmed this Court's decision that HIFF lacked associational standing. *Tanner-Brown III*, 105 F.4th at 447. But the Circuit concluded that Tanner-Brown had sufficiently alleged Article III standing, "assum[ing] that Tanner-Brown is correct on her legal theory that the statute could give rise to a trust relationship with attendant fiduciary duties under certain circumstances, including if a guardian or representative were appointed by the Secretary or the history of the government's control created a trust." *Id.* at 443–46. On the merits, the panel concluded it did "not know if the federal government owes any duty to Curls' estate because [it did] not know whether the Secretary appointed a representative to oversee his allotment pursuant to Section 6." *Id.* at 448. The panel accordingly remanded the matter back to this Court. *Id.* at 449.

On remand, Plaintiffs amended their Complaint to add a claim for "breach of trust and fiduciary duties in management of trust funds, land and resources." FAC ¶¶ 111–14. The operative Complaint still does not identify any HIFF members other than Tanner-Brown. Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(1) as to HIFF, and

5

Rule 12(b)(6) as to Tanner-Brown. Defs.' Mem. P. & A. in Supp. of Mot. to Dismiss ("MTD"), ECF No. 46-1. The motion is now fully briefed and ready for this Court's consideration.

### III. LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts "construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged," and accepting those facts as true. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). "The plaintiff bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing." *Tanner-Brown III*, 105 F.4th at 443 (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). "The 'irreducible constitutional minimum of standing' requires that the plaintiff suffer an injury in fact fairly traceable to the challenged conduct of the defendant that can likely be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish associational standing, a party must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 447 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The third element is prudential and focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Thus, where the organization's participation necessarily requires "consideration of the individual circumstances of any aggrieved member of the organization," *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015), or is

6

redundant with another party's participation in the suit, then the organization lacks associational standing, *Tanner-Brown III*, 105 F.4th at 447.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).  But a court need not accept as true conclusory allegations or legal conclusions. *Iqbal*, 556 U.S. at 678, 681.

## IV.  ANALYSIS

The Court first analyzes HIFF's associational standing and concludes, yet again, that it has failed to sufficiently plead its standing to sue.  The Court then analyzes Tanner-Brown's claims of breach of trust and fiduciary duties, including failure to provide an accounting. Because the Court concludes that Tanner-Brown has failed to plead that the Interior Secretary took any steps that would have triggered duties under Section 6 of the 1908 Act, the Court finds she has failed to state a claim, and grants Defendants' motion to dismiss without addressing the parties' statute of limitations arguments.

### A.  HIFF's Lack of Standing

As discussed, this Court previously dismissed HIFF's claims for lack of standing, *Tanner-Brown I*, 2022 WL 2643556, at *6–7, and the D.C. Circuit affirmed, *Tanner-Brown III*, 105 F.4th at 447.  Though Plaintiffs amended their Complaint, not much has changed regarding pleadings about HIFF.  And the Court fails to see how the threshold issue of standing that two

7

courts have previously passed on would now be "premature." *But see* Pls.' Resp. & Mem. P. & A. in Opp'n ("Pls.' Opp'n") at 34, ECF No. 50. The Court again finds that HIFF has failed to plead its associational standing.

The parties dispute only the third element of the *Hunt* test for associational standing: that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. The Circuit Court's analysis on the "administrative convenience and efficiency" regarding HIFF's associational standing remains equally applicable now. *See Tanner-Brown III*, 105 F.4th at 447 (quoting *United Food & Com. Workers Union*, 517 U.S. at 557). As the Circuit Court explained, the relief Plaintiffs request for their accounting claim would require "making individualized findings regarding specific allotments held in trust for specific allottees." *Id.* The addition of Plaintiffs' trust mismanagement claim does not change the Court's analysis. *See* FAC ¶¶ 111–14. Setting aside that the new claim and amended prayer for relief do not mention any Freedman other than George Curls, *see* FAC at 43–46, if HIFF seeks comparable relief, then directing Defendants to "reconvey[] . . . the allotted lands and all rights and interests therein" to the estates of other Freedmen minors would surely require additional individualized findings, *see id.* at 46. If anything, the requested relief for alleged trust mismanagement would seem to require even more individualized findings than simply providing accountings. *See Tanner-Brown III*, 105 F.4th at 447.

Moreover, HIFF has failed to identify a single member whose interest is not already represented, such that "HIFF's participation in the suit would [still] be redundant with Tanner-Brown's." *See id.* Though not mentioned in the operative Complaint, *see* FAC ¶ 37, Plaintiffs argue in their opposition brief that "[t]he HIFF representatives who have standing are the other

8

members of the Family of Leatrice Tanner Brown, such as her brother Ronald and sister, Vickie and their children, all members of HIFF," Pls.' Opp'n at 35 n.28, 42.  But Plaintiffs seem to forget that Tanner-Brown has standing to sue not in her capacity as a descendant of a Freedman, but as a personal representative of a Freedman's estate; Plaintiffs fail to allege that any of Tanner-Brown's family members have a similar legal relationship to a Freedman.  *Compare Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 109–13 (D.D.C. 2016), *with Tanner-Brown III*, 105 F.4th at 443.  Further, Plaintiffs fail to identify any HIFF member who would have standing to sue on behalf of an estate other than George Curls, so participation of Tanner-Brown's siblings would still be redundant with her participation.  *See* Defs.' Reply at 15, ECF No. 51.

Plaintiffs argue that they have identified additional members with standing by describing them.  *See* Pls.' Opp'n at 34–35.  That argument is foreclosed by Circuit precedent.  "When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured."  *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).  "Rather, the petitioner must specifically 'identify members who have suffered the requisite harm.'"  *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).  Plaintiffs' Amended Complaint describes HIFF's membership as "comprised of persons with African and Native American ancestry, each of whom has standing to sue in their own right and of representatives of the estates of minor Freedmen allottees."  FAC ¶ 37.  This conclusory, general reference to unidentified representatives is legally insufficient.  For these reasons, once again, the Court concludes that HIFF lacks associational standing, and grants Defendants' Rule 12(b)(1) motion.

### B. Tanner-Brown's Failure to State a Claim

Both of Tanner-Brown's accounting and trust mismanagement claims depend on the existence of trust or fiduciary duties owed by the Interior Secretary to Curls.  *See* Pls.' Opp'n

at 10–22 (addressing the FAC's two claims together). For reasons similar to those articulated in *Tanner-Brown II*, the Court concludes Tanner-Brown has failed to plead or otherwise support that the Interior Secretary took steps that would have triggered any duty under Section 6 of the 1908 Act, and that in the absence of any duty, Tanner-Brown's claims fail.

"Although there is a 'general trust relationship between the United States and the Indian People,' the Supreme Court has explained that this relationship in itself does not give rise to any fiduciary obligation of the federal government." *Tanner-Brown III*, 105 F.4th at 448 (quoting *United States v. Mitchell*, 463 U.S. 206, 225 (1983)). "The Federal Government owes judicially enforceable duties to a tribe 'only to the extent it expressly accepts those responsibilities.'" *Arizona v. Navajo Nation*, 599 U.S. 555, 564 (2023) (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 177 (2011)). "Whether the Government has expressly accepted such obligations 'must train on specific rights-creating or duty-imposing' language in a treaty, statute, or regulation."[3] *Id.* (quoting *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)). The Supreme Court has described this requirement as rooted in "separation of powers principles." *Id.*

---

[3] At times, Plaintiffs appear to challenge this authority based on older Supreme Court precedents—namely, *Mitchell II* and *White Mountain Apache Tribe*—to argue that Defendants breached a "trust relationship between the Freedmen minors and Defendants . . . rooted in and derived from a federal treaty, as well as a body of law that endorses the trust principals expressed in that treaty." *See* Pls.' Opp'n at 13–14 (citing *United States v. Mitchell,* 463 U.S. 206 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003)). Notably the Supreme Court's majority opinion in *Arizona v. Navajo Nation* did not discuss either of those cases. *See* 599 U.S. 555 (2023). *But see id.* at 597–98 (Gorsuch, J., dissenting) (comparing the Navajo's complaint to the claims in *Mitchell II* and *White Mountain Apache Tribe*). Regardless, the Supreme Court's majority opinion and the Circuit's opinion in this case reaffirm that any duty must derive from the text of a treaty, statute, or regulation. *See id.* at 564; *Tanner-Brown III*, 105 F.4th at 448. Thus, Defendants are correct that "[u]nder now-settled law, Plaintiffs cannot simply rely on the existence of a trust relationship or general trust principles to state a claim for an accounting or for trust mismanagement." *See* Defs.' Reply at 4–6.

Here, Tanner-Brown derives the Interior Secretary's alleged duties from Section 6 of the 1908 Act.[4] *See, e.g.*, Pls.' Opp'n at 17–19. As the Circuit Court explained in this case:

> Section 6 details the extent of the Secretary's duties owed to minor allottees. The Secretary is "empowered" to appoint "local representatives" "as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors." 1908 Act § 6. The statute thus initially confers a discretionary power: ***the Secretary may choose, but is not obligated, to appoint a representative if she deems it necessary***. If the representative then concludes that a minor's allotment is not being properly cared for, he "shall have power and it shall be [his] duty" to report the matter to the probate court, have the matter fully investigated, prosecute any remedy necessary to protect the minor allottee's interests and "make full and complete reports to the Secretary." *Id.* ***Once the Secretary takes the discretionary step of appointing a representative and the representative forms the opinion that the allotment is not being properly cared for, then, there are certain statutory duties owed to the minor allottees.***

*Tanner-Brown III*, 105 F.4th at 448 (alteration in original) (emphases added). Thus, the Secretary's duties are conditioned on the Secretary first appointing a representative. *See id.* Plaintiffs resist this interpretation. *See* Pls.' Opp'n at 19 ("Defendants' current excuse is that the Secretary was not required to appoint representatives, that this duty was only discretionary, and thus the Secretary could in his discretion ignore Section 6 and be totally off the hook."). But this Court is bound by the Circuit Court's interpretation of the 1908 Act.

The Circuit Court did "not know if the federal government owes any duty to Curls' estate because [it did] not know whether the Secretary appointed a representative to oversee his allotment pursuant to Section 6." *Tanner-Brown III*, 105 F.4th at 448. That problem persists. As the Circuit court explained, "Tanner-Brown seeks an accounting because she lacks information that is likely to be in Interior's possession regarding Curls' estate—including whether a representative was appointed." *Id.* But Tanner-Brown has failed to plead her

---

[4] Though Tanner-Brown also refers to Section 2 of the 1908 Act, she provides no explanation for why that Section would establish any duty independent of Section 6. *See, e.g.*, FAC ¶ 56; Pls.' Opp'n at 19.

11

entitlement to an accounting, as she does not even plead that the Secretary appointed a representative to oversee Curls' estate.  *See* FAC.

The arguments in Plaintiffs' opposition brief are similarly deficient.  Tanner-Brown argues that "there is record proof that such representatives were actually appointed, including for the Curl[s] Freedmen minors."  Pls.' Opp'n at 19.  But she does not provide any citation to support that assertion.  *See id.*  In fact, she argues that the "Interior Department has no records of management of George Curls' allotments."  *Id.* at 9.

Moreover, Tanner-Brown has failed to explain how any of the documents attached to her Complaint plausibly support that the Interior Secretary appointed a representative for Curls' estate either.  The Circuit Court acknowledged that "federal courts were involved with Curls to some extent" and cited filings from the U.S. Court for the Indian Territory in a case captioned *In the matter of the Guardianship of Willie Curls, Edward Curls, James Curls, George Curls, Stephenia Curls, Beatrice Curls and Julius Curls*. *Tanner-Brown III*, 105 F.4th at 448.  The cited documents all involve Rathburn Alden, who served as the guardian of Curls and his siblings before Curls received his allotments in 1910.  Ex. F to FAC ("Ex. F") at 2, 20, 69, ECF Nos. 43-8, 43-11.  These documents appear to be related to the same documents this Court addressed in its decisions in *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 112 n.7 (D.D.C. 2016), and *Tanner-Brown I*, 2022 WL 2643556, at *5 n.5.  Though the Court previously noted "some limited evidence of mismanagement or impropriety on the part of a man named Rathburn Alden, who served as the guardian of George Curls and his siblings for a short period," Plaintiffs do not explain how these documents support the proposition that the Interior Secretary appointed a representative for Curls' estate.  *See Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 112 n.7 (D.D.C. 2016).  In fact, Plaintiffs do not even discuss these documents in their opposition brief.

The Court finds that these documents are insufficient to support Plaintiffs' claims. First, as the Court previously noted, Alden was no longer the guardian of George Curls' estate in 1910, when he received his allotments, as Riley Curls was appointed guardian of George Curls' estate in August 1908. *Id.* Second, Plaintiffs do not allege that either of these guardians were representatives appointed by the Secretary. And third, the fact that these documents were filed in a federal court does not indicate that the Secretary appointed a representative. For instance, some of the documents concerned "Oil and Gas Mining Lease[s]." *See, e.g.*, Ex. F at 3. Under Section 2 of the 1908 Act, "leases of restricted lands for oil, gas or other mining purposes" required approval by the Secretary. But this authority does not mean that the Secretary appointed representatives "to inquire into and investigate the conduct of guardians or curators having in charge the estates of . . . minors" by virtue of regulating oil and gas leasing. *See* 1908 Act § 6. In the absence of factual allegations, or any meaningful explanation, to support that a representative had been appointed to investigate the guardian of Curls' estate, the Court sees no fact from which to infer this key event occurred and triggered specific duties. As a result, Tanner-Brown has failed to plead a plausible trust or fiduciary duty that Defendants could have breached, so her claims for an accounting and trust mismanagement must both be dismissed.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 46) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 24, 2025                                         RUDOLPH CONTRERAS
                                                                   United States District Judge